**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

UNITED STATES OF AMERICA,

    v.                              **CRIMINAL NO. 2:11cr73-3**

XAVIER HOLLEY,

    Defendant.

## OPINION

This matter comes before the court on Defendant's pro se Motion for a New Trial, filed May 9, 2024. ECF No. 631 ("Motion for New Trial" or "Motion"). For the following reasons, Defendant's Motion for a New Trial is **DENIED**.

### I.

On June 20, 2012, a grand jury returned a Second Superseding Indictment charging Defendant with five counts related to a 2010 conspiracy and attempted robbery of the Gold Shop in Portsmouth, Virginia, during which employee Robert Nelson was killed. ECF No. 210. Four codefendants were also named in the indictment: Montarius Murry, Kevin Stevens, Raneisha Sifford, and Ronald Gober.[1] Id. The indictment charged Defendant with Conspiracy to Interfere with Commerce by Violence, in violation of 18 U.S.C. § 1951 (Count One); Attempt to Interfere with Commerce by Robbery, also in violation of 18 U.S.C. § 1951 (Count Two); Use and Carry

_____

[1] An unindicted juvenile also participated in the conspiracy.

of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); Attempt to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951 (Count Four); and Use of a Firearm Causing Death During a Violent Crime in violation of 18 U.S.C. § 924(j)(1), and 2 (Count Five). Id. at 2-6. Defendant pled not guilty and proceeded to trial along with codefendant Stevens. Codefendants Murry and Gober pled guilty and testified for the United States at Defendant's trial. On July 13, 2012, a jury found Defendant guilty on all five counts. ECF No. 259.

Prior to sentencing, the Probation Office of this court prepared a Presentence Investigation Report, which contained the following facts regarding Defendant's offense conduct. See ECF No. 274. Murry contacted Defendant on October 4, 2010, to obtain a gun for the purpose of robbing the Gold Shop. Id. at 6. Defendant gave Murry and Stevens the gun that day. Id. On October 5, 2010, Sifford drove Murry, Stevens, and the unindicted coconspirator to the Gold Shop. Id. Murry, Stevens, and the unindicted coconspirator entered the Gold Shop with the intent to rob it and Stevens carried the gun that Defendant provided. Id. However, they abandoned this robbery attempt because there were too many people around. Id. Murry called Defendant after the abandoned robbery attempt to ask if he could keep the gun to try

2

again another day, to which Defendant agreed on the promise that
he would receive some money from the successful robbery.   Id.

On October 6, 2010, Murry and Stevens met Gober and Defendant
at the house of Gober's sister.   Id.   Gober then drove the group
to the Gold Shop and parked outside in the shopping center.   Id.
at 7.   Murry and Stevens exited the car, with Stevens again
carrying the gun Defendant had provided, while Gober and Defendant
stayed behind in the car.   Id.   Murry and Stevens then entered the
Gold Shop with intent to rob it.   Id.   Stevens shot the lone
employee in the store, Robert Nelson, and the pair then fled the
store without taking anything.   Id.   Once back at the vehicle,
Gober drove the group away from the scene and Stevens gave the gun
back to Defendant.   Id.   Defendant later disposed of the gun in a
storm drain, and it was never recovered.   Id.

On October 23, 2012, the court sentenced Defendant to a total
term of life imprisonment plus sixty months, structured as follows:
life imprisonment on Count Five; 240 months on each of Counts One,
Two, and Four, concurrent with the sentence on Count Five; and 60
months on Count Three, consecutive to all other sentences.   ECF
No. 287 at 2-3. On October 30, 2012, Defendant filed a Notice of
Appeal.   ECF Nos. 294, 297.   The Fourth Circuit consolidated
Defendant's appeal, No. 12-4862, with codefendant Stevens's
appeal, No. 12-4847.   ECF No. 300.   The Fourth Circuit affirmed

3

both of the defendants' convictions and sentences on September 9, 2013. ECF Nos. 343, 344.

## II.

Following an unsuccessful attempt to collaterally attack his convictions, Defendant filed a Successive Motion to Vacate under 28 U.S.C. § 2255 on April 12, 2021. ECF No. 509 (§ 2255 Motion). The court stayed decision on Defendant's § 2255 Motion pending the Supreme Court's decision in United States v. Taylor, 596 U.S. 845 (2022), which directly related to his case. ECF No. 523. On February 14, 2023, following the Supreme Court's decision in Taylor, the court found that Defendant's convictions on Count Three and Count Five were based on predicates for firearms convictions that were no longer constitutionally valid. ECF No. 560 at 9. The court therefore granted Defendant's § 2255 Motion, vacated Counts Three and Five, and ordered him to be resentenced on the remaining counts of conviction. Id.

The court scheduled Defendant's resentencing hearing for January 10, 2024. On the evening of January 9, 2024, Defendant, through counsel, filed a Motion and Brief to Continue the Sentencing Hearing. ECF No. 612 ("Motion to Continue"). In the Motion to Continue, Defendant requested a continuance to examine factual circumstances that he argued could affect his sentencing and/or garner him a new trial. Id. at 1. Specifically, Defendant

4

alleged that he had been arrested for a crime unrelated to the Gold Shop robbery on October 5, 2010, and that he was in police custody at the time that codefendant Murry had supposedly contacted him about keeping the gun for the October 6 robbery. Id. at 1-2. According to Defendant, Murry's trial testimony tied Defendant into the conspiracy, so if Murry's testimony was proven to be false, this could affect consideration of the mitigating factors at resentencing, or possibly, warrant a new trial. Id. at 2.

The court proceeded with the hearing on January 10, 2024, but considered the Motion to Continue before conducting resentencing. See ECF No. 613. Defendant elected to take the stand at the hearing in support of his new claim, testifying that he had been arrested for another crime on October 5, 2010, and so could not have communicated with Murry that afternoon as Murry had testified. See ECF No. 633 at 10-12. However, Defendant admitted that his new theory did not change the fact that he had provided the gun to Murry on October 4, that he was present in the car when Robert Nelson was murdered, or that he disposed of the gun after fleeing the scene. Id. at 16. Defendant testified that he had informed his attorneys of his October 5 arrest during his trial, but they did not use this information to impeach Murry's testimony. Id. at 15. After hearing Defendant's testimony and considering his arguments, the court granted a brief continuance and directed

defense counsel to further investigate Defendant's new claim.  ECF No. 613.

Defense counsel filed a status report on February 9, 2024, with the results of that investigation.  ECF No. 614.  Defense counsel obtained jail admission records and bond records that reflected Defendant's arrest on October 5, 2010.  Id.  According to police records, Portsmouth Police detained Defendant at 1:40 p.m. and transferred him to the "Detective Bureau."  Id.  A detective obtained a warrant for his arrest at 4:52 p.m.  Id.  The detective attempted to interview Defendant at 5:30 p.m., but Defendant was non-compliant, and he was then placed into custody. Id.  The detective executed the arrest warrant at 5:45 p.m.  Id. Defendant obtained bond and was released from custody at 10:14 p.m.  Id.

Defense counsel was unable to obtain records reflecting a property inventory at the time Defendant was arrested.  Id. at 2. A sergeant in the Portsmouth Sheriff's Office informed defense counsel that such records are regularly destroyed after three years.  Id.  Defense counsel contacted his co-counsel from the trial, who had since retired from legal practice but was willing to testify as to her recollection of her trial decisions on this point or matter.  Id.  The United States did not file a response to the Status Report.

Although the court briefly delayed resentencing to allow for further investigation and consideration of Defendant's new claim, the court did not find that the information resulting from defense counsel's investigation warranted continued delay, as nothing new was presented to the court.  Accordingly, the court rescheduled the resentencing hearing for April 18, 2024.  On April 17, 2024, the Clerk received Defendant's <u>pro se</u> Motion for a New Trial, filed subject to defect.  ECF No. 617 ("Defective Motion for a New Trial" or "Defective Motion").  Generally, the Defective Motion for a New Trial made similar arguments as those Defendant presented at the initial resentencing hearing, i.e., that Murry's testimony against him at trial was unreliable and that his trial counsel should have impeached the testimony with facts known to them at the time.  <u>See generally id.</u>  Defendant's present counsel, who was one of the two attorneys who represented Defendant at trial, did not file this motion for Defendant, seeing it as "a conflict of interest for [him] to file anything that would imply [he] may have missed or failed to argue something at trial."  ECF No. 617-1.  At the hearing on April 18, 2024, the court entered an oral order striking the Defective Motion for a New Trial, but advising Defendant that he could refile the motion with the defect corrected within thirty

days.  See ECF No. 618.[2]  The court proceeded with resentencing,
sentencing Defendant to a total of 480 months' imprisonment on the
remaining counts of conviction, id., and the court subsequently
entered an Amended Judgment reflecting Defendant's new sentence,
ECF Nos. 619, 620.

On April 19, 2024, Defendant, through counsel, filed a Notice
of Appeal of the Amended Judgment.  ECF No. 622.  Defendant also
requested the court appoint new counsel to represent him in the
appeal.  Id.  On April 22, 2024, Defendant filed, through counsel,
a Withdrawal of the Notice of Appeal.  ECF No. 625.  However,
Defendant refiled the Notice of Appeal on April 30, 2024, ECF No.
626, as his withdrawal of his previous Notice of Appeal was
apparently the result of confusion, see ECF No. 626-1.  The Fourth
Circuit has held Defendant's appeal of the Amended Judgment in
abeyance pending the refiling of his Defective Motion for a New
Trial and this court's disposition of that motion.  See ECF No.
632; see also ECF Nos. 636, 638.

### III.

The instant pro se Motion for a New Trial was filed on May 9,
2024.  ECF No. 631.  This Motion is a new version of the Defective
Motion that expands on the claims made in the defective version.

---

[2] The court entered a written striking order following the
hearing.  ECF No. 621.

Defendant's instant Motion is premised on two grounds, both of which challenge the testimony of his codefendants introduced against him at trial. The first ground relates to Defendant's communications with Murry on the afternoon of October 5 about the murder weapon. At trial, Murry testified that, after the initial robbery attempt on October 5, 2010, was unsuccessful, he talked to Defendant about keeping the gun another day to try again on October 6. ECF No. 318 at 310-12. Cell phone data introduced at trial showed two texts from Murry's phone to Defendant's phone at 8:51 a.m. and 1:53 p.m., and one text from Defendant's phone to Murry's phone at 2:41 p.m. See ECF No. 319 at 489. Defendant claims that he was not able to access his phone after he was arrested at 1:40 p.m. that day, and so, he could not have replied to Murry at 2:41 p.m. Id. at 4. He claims that the arrest records show that Murry's testimony must have been false. Id. at 5-6. Therefore, according to Defendant, because the prosecution knew he had been arrested on October 5 and could have obtained his arrest records, the prosecution sponsored false testimony in providing Murry's testimony regarding the October 5 conversation. Id.

Defendant's second ground relates to his whereabouts on the morning of October 6, 2010. At trial, both Gober and Murry testified that Defendant was present at the house of Gober's sister that morning. See ECF No. 319 at 321 (Murry testimony); id.

9

at 428-30 (Gober Testimony).  Defendant maintains, as he did prior to his trial, that he was not at the house that morning, but rather, at a hotel in another area of Portsmouth.  See id. at 502-03.  According to Defendant, cell site location analysis introduced at trial shows that his cell phone pinged off a tower near that hotel at 8:09 a.m., 8:25 a.m., 11:09 a.m., and 11:39 a.m.  See ECF No. 631 at 11-12.  Defendant argues that the cell site location analysis shows that he could not have been at Gober's sister's house and thus, that his codefendants provided false testimony regarding his whereabouts on the morning of October 6. Id. at 17-18.  Defendant concludes that the alleged false testimony deprived him of a fair trial and that he was convicted without due process of law.  Id. at 21.

The United States filed a Response in Opposition to the Motion for a New Trial on June 20, 2024.  ECF No. 637.  Defendant did not file a reply by the deadline of June 26, 2024.  However, Defendant's pro se "Reply to Response" was received by the Clerk and docketed on July 19, 2024, having apparently been mailed on July 16, 2024.[3]  ECF No. 639 ("Reply").  This matter is now ripe

---

[3] An incarcerated person's legal papers are considered filed when they are delivered to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266 (1988).  Here, Defendant did not provide the date he gave the Reply to prison authorities for mailing, but the envelope was stamped on July 16, 2024.  See ECF No. 639-1.  Defendant did not date the filing, but, in the

for judicial determination.  The Reply was filed well after the deadline, but the court considers certain arguments made therein in determining the appropriate disposition of the Motion.[4]

On August 6, 2024, the Clerk received and docketed Defendant's pro se "Supplemental Brief to Motion for a New Trial."  ECF No. 640 ("Supplemental Brief").  The Supplemental Brief attempts to buttress Defendant's Motion for a New Trial with an additional attack on codefendant Gober's credibility.  See generally id.  The local criminal rules of this court require parties to obtain leave of court before filing additional briefs beyond the response and reply briefs.  See E.D. Va. Local Crim. R. 47(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court.").  Here, Defendant did not seek or obtain the court's leave to file the Supplemental Brief.  However, the Supplemental Brief does not add new information not already before the court and addressed in this Opinion.[5]  Defendant is

---

certificate of service, he stated that he provided a copy of it to the United States on July 10, 2024.  ECF No. 639 at 15.  The Reply would be untimely even if Defendant had delivered it to prison authorities on July 10.

[4] The arguments made in the Reply are largely redundant of the arguments made in the Motion for a New Trial and would not affect the court's analysis.  The court chooses to address two noteworthy arguments made in the Reply to fully explain the reasoning for its decision on the Motion.  See infra notes 7 and 8.

[5] See infra note 10 and accompanying text.

11

**ADVISED** that further supplemental briefs filed without obtaining the appropriate leave of court will be stricken from the record.

## IV.

Upon a defendant's motion, Federal Rule of Criminal Procedure 33(a) permits courts to "vacate any judgment and grant a new trial if the interest of justice so requires."[6] Motions under Rule 33 are subject to two different filing timelines depending on the grounds of the motion. If the grounds of the motion are newly discovered evidence, the motion "must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). If the motion is premised on any grounds other than newly discovered evidence, it "must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). These time limits are not jurisdictional, but instead, are inflexible claim-processing rules that are subject to forfeiture. See <u>Eberhart v.</u>

---

[6] Defendant did not identify the rule he sought to invoke in his Motion for a New Trial. Given that Defendant requested a "new trial," the United States presumed that he relies on Rule 33, which expressly covers new trials, rather than Rule 29, which covers motions for a judgment of acquittal. Defendant's Reply also addresses the timeliness of the Motion under Rule 33. ECF No. 639 at 2-3. The court agrees that Defendant's Motion is best characterized as a motion under Rule 33. In any case, motions under Rule 29 are subject to a fourteen-day time limit from the date of the guilty verdict or the date the court discharges the jury. Fed. R. Crim. P. 29(c)(1). As discussed herein, Defendant has clearly exceeded this time limit and thus, his Motion for a New Trial would be untimely under either Rule 29 or Rule 33.

_United States_, 546 U.S. 12, 15-16 (2005).  Here, the United States

has raised the timeliness issue in its Opposition, see ECF No. 637

at 8-15, so the court must consider the timeliness of Defendant's

Motion.

The jury returned its guilty verdict on July 13, 2012, see

ECF No. 259, and Defendant filed his Motion for a New Trial on May

9, 2024.  Defendant's Motion is not timely under either standard

of Rule 33.[7]  Moreover, if the Motion for a New Trial is based on

newly discovered evidence under Rule 33(b)(1), Defendant's first

requirement is to demonstrate that the evidence he cites is "in

---

[7] In his Reply, Defendant argues that the time for him to file
a motion under Rule 33 started from the date the court entered the
Amended Judgment following resentencing, April 18, 2024.  ECF No.
639.  Under this interpretation, the Amended Judgment reset the
clock to give Defendant a new window to file a Motion for a New
Trial and he was only subject to the timeliness requirements in
Rule 33 running from that date.  There are several problems with
this interpretation that do not require full analysis here, but
chief among them is that it misreads the plain language of Rule
33.  Both subsections of Rule 33's timeliness provision specify
that the time for filing runs from the "verdict or finding of
guilty."  The court's Amended Judgment was plainly not a new
verdict or finding of guilt, so it did not affect the time
Defendant had to file a motion under Rule 33.  See _United States
v. Witasick_, 2014 WL 1355433, at *3 (W.D. Va. Apr. 7, 2014) ("To
calculate either deadline [under Rule 33], ... the time runs from
the return of the verdict or finding of guilt, not from the date
of the sentence or final judgment.").  In fact, the "verdict or
finding of guilty" language was chosen to clarify the triggering
event for filing, eliminating confusion created by a previous
version of the rule that specified the "final judgment" as the
triggering event.  See Advisory Committee Notes to the 1998
Amendments to Rule 33.

fact, newly discovered, i.e., discovered since the trial[.]"
United States v. Wolf, 860 F.3d 175 (4th Cir. 2017) (quoting United
States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995)). Here, none
of the evidence that Defendant now points to in support of his
Motion is new. Defendant and his attorneys were aware of his
October 5 arrest at the time of his trial, see ECF No. 633 at 13-
14, and the arrest was reported on his Presentence Investigation
Report, see ECF No. 520 at 17. The arrest records recently
obtained from the Portsmouth Police Department corroborate the
fact that Defendant was arrested on October 5, but Defendant and
his counsel already knew this fact. Defendant's claim that the
cell site location data presented at trial undermines the
credibility of Murry and Gober is not based on new evidence, but
rather, is simply a rehashed characterization of evidence
presented at trial. See infra Section V. Accordingly, Defendant
is not entitled to the three-year timeline in Rule 33(b)(1), but
the fourteen-day timeline in Rule 33(b)(2). The deadline for
Defendant to file his Motion was July 27, 2012, and he filed it
nearly twelve years too late.

Since Defendant's Motion was filed after the time for filing
expired, it may only be considered, if the court extends time for
filing after finding that Defendant failed to act because of
excusable neglect. See Fed. R. Crim. P. 45(b)(1)(B) ("When an act

14

must or may be done within a specified period, the court on its
own may extend the time ... after the time expires if the party
failed to act because of excusable neglect.")  Therefore, in the
current context, a finding of excusable neglect is required to
extend time under Rule 45.  See United States v. Jones, 658 F.
App'x 188, 190 n.* (4th Cir. 2016) (unpublished) ("The advisory
committee notes to the 2005 and 2009 amendments state that this
excusable neglect rule applies to the time limit for motions filed
under Fed. R. Crim. P. 33."); United States v. Chujoy, 207 F. Supp.
3d 660, 663-64 (W.D. Va. 2016) (similar).  In Pioneer Investment
Servs. Co. v. Brunswick Assocs. L.P., the Supreme Court set out
four factors to determine whether a movant has demonstrated
excusable neglect:  (1) the danger of prejudice to the opposing
party; (2) the length of the delay and its potential impact on
judicial proceedings; (3) the reason for the delay, including
whether it was within the reasonable control of the movant; and
(4) whether the movant acted in good faith.  507 U.S. 380, 395
(1993).  The court will look to the Pioneer factors in considering
whether Defendant has shown excusable neglect here.  See Jones,
658 F. App'x at 191 (applying the Pioneer factors to a Rule 33
motion in reviewing the district court's excusable neglect
analysis); United States v. Farris, 834 F. App'x 811, 812 (4th
Cir. 2021) (unpublished) (same); Chujoy, 207 F. Supp. 3d at 664

15

("Though the Fourth Circuit has not yet addressed the excusable neglect standard for late-filed Rule 33 motions, courts routinely apply the factors outlined in Pioneer[.]"). The Fourth Circuit has emphasized that "'excusable neglect' is not easily demonstrated, nor was it intended to be." Thompson v. E.I. DuPont de Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996). A finding of excusable neglect should only be made in the extraordinary case, where injustice would otherwise result, and the burden of establishing such an extraordinary case is on Defendant. See id. (quoting In re O.P.M. Leasing Servs., Inc., 769 F.2d 911, 917 (2d Cir. 1985)).

Consideration of the Pioneer factors weighs heavily against a finding of excusable neglect here. The most important factor for determining whether Defendant's neglect is excusable is the reason for his delay. Id. During his testimony at the initial resentencing hearing, Defendant attempted to justify his delay in asserting his current claims by stating that his trial attorneys did not want to present the arguments he now asserts. ECF No. 633 at 14. However, Defendant has had ample opportunity to raise these claims since his trial, as he filed a direct appeal of his conviction and two habeas motions while incarcerated. Despite this, he waited to raise these claims until the eve of his resentencing hearing. His attorneys' reluctance to make these

arguments is not a sufficient excuse to justify why Defendant failed to raise them in the nearly twelve years since his conviction.

The other Pioneer factors similarly counsel against finding excusable neglect. The delay in filing is extremely lengthy and the Motion would have an enormous impact on judicial proceedings, as it seeks to upend a jury's verdict that was rendered following a multiday trial and that verdict was affirmed on appeal over a decade ago, on September 9, 2013. See ECF Nos. 343, 344. In the unlikely event that Defendant could obtain a new trial on the merits of his claims, see infra Section V, it would result in enormous prejudice to the United States. The United States would be forced to undertake significant effort to retry Defendant for crimes that occurred nearly fourteen years ago. Finally, given the timing and circumstances of the Motion, the Defendant has not met his burden of acting in good faith in waiting twelve years to file the Motion, at the "eleventh hour" before resentencing, after a full appeal and two collateral proceedings, based on information he claims he knew at trial and discussed with his counsel. See ECF No. 633 at 12-14; infra note 11 and accompanying text.

In sum, Defendant filed his Motion for a New Trial well beyond the time limit for so filing and his delay was not due to excusable neglect. The court thus **DENIES** the Motion for a New Trial.

**V.**

Although the court need not reach the merits of Defendant's Motion, the court will briefly note the major problems with the merits of his claims and why he would be unlikely to obtain a new trial, even if he had timely filed the Motion. At bottom, Defendant's claim is that the evidence he now points to calls into question the testimony of codefendants Murry and Gober. The jury is responsible for weighing the credibility of the witnesses, and so, the standard for "jettisoning a jury verdict in favor of a new trial" on this basis is "demanding." See United States v. Rafiekian, 68 F.4th 177, 186-87 (4th Cir. 2023) (quoting United States v. Rafiekian, 991 F.3d 529, 549 (4th Cir. 2021)).[8]

First, the evidence Defendant now points to does not conclusively contradict the testimony of his codefendants. The police records from October 5 do not show whether Defendant had his phone on him after he was detained by Portsmouth Police.

---

[8] In an apparent attempt to avoid the difficult proposition of challenging the jury's findings, Defendant stresses in his Reply that his claims do not rest on the jury's weight of the witnesses' testimony, but rather, that the prosecution should have known they were sponsoring false testimony. ECF No. 639 at 6, 12. Naturally, a prerequisite showing for this theory is that the witnesses' testimony was, in fact, false. As discussed herein, Defendant fails to make this showing.

Defendant was detained at 1:40 p.m. but he was not booked into custody until 5:30 p.m., and he was released on bond at 10:14 p.m. ECF No. 614. Defendant could have texted Murry at 2:41 p.m., after he was detained but before he was booked into jail, as there is no evidence that Defendant did not have his phone on him during this period other than Defendant's own testimony.[9] He could have also communicated with Murry following his release from jail that night.

Moreover, Murry's testimony was that he communicated with Defendant on October 5 via text and a call from someone else's phone after the initial casing of the Gold Shop that day. ECF No. 318 at 310-12. The initial casing of the Gold Shop concluded at approximately 3:19 p.m. See ECF No. 318 at 214. Even if the court were to credit Defendant's testimony that he did not have his phone on him after he was detained, his version of events still does not contradict Murry's testimony. Murry could have texted and called Defendant following Defendant's release from jail that night. Further, although there was no evidence of additional communications between Murry's and Defendant's phones introduced

---

[9] The problem with verifying Defendant's claim illustrates the need for timely filing motions under Rule 33. Had defendant timely raised this issue, he may have obtained the property inventory following his arrest, which would have shed light on the question of when Defendant had his phone on October 5, 2010. Those records are destroyed every three years per the police department's policy, see ECF No. 614 at 2, so probative evidence of Defendant's claim has now been irrevocably lost.

19

at trial, Murry testified that he had communicated with Defendant using someone else's phone that day. ECF No. 318 at 310-12.

The cell site location analysis does not contradict the codefendants' testimony regarding Defendant's whereabouts on the morning of October 6 either.    The analysis only showed that Defendant's phone was near the tower it pinged at 8:09 a.m., 8:25 a.m., 11:09 a.m., and 11:39 a.m.    See ECF No. 319 at 494-97. Defendant could have been at Gober's sister's house during the period between 8:25 a.m. and 11:09 a.m., which would be consistent with both Gober's and Murry's testimony.   See ECF No. 319 at 321 (Murry testimony); id. at 428-30 (Gober Testimony).

Second, as discussed, Defendant's claims only challenge the credibility of the witness testimony against him with regard to his communication with Murry on October 5 and his presence at the house of Gober's sister on October 6.    Even assuming his claims are true and that Murry and Gober gave false testimony regarding these events, it does little to change the undisputed offense conduct directly relevant to his convictions.    As Defendant acknowledged during his testimony on January 10, 2024, his current claims do not call into question that he provided the murder weapon to Murry and Stevens on October 4, that he was present in the car when the murder weapon was used on October 6, and that he disposed of the murder weapon after fleeing the scene.   See ECF No. 633

20

at 16.  While the question of Murry's and Gober's credibility on some issues could undermine their credibility on other issues, Defendant's convictions were not solely reliant on the testimony of these two codefendants.  The prosecution introduced other pieces of evidence establishing Defendant's actions between October 4-6, 2010, and Defendant admits to material participation in the conspiracy to rob the Gold Shop.  Defendant's current Motion does not present the type of evidence that "weighs heavily against the verdict" required to warrant a new trial.  United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir. 1985).

Ultimately, Defendant is now attempting to impeach the credibility of the witnesses against him nearly a dozen years after the fact.  His current arguments may have been appropriate considerations for cross-examination and argument at trial, but they cannot support a Motion for a New Trial at this juncture.[10]

---

[10] Defendant's Supplemental Brief, ECF No. 640, does not present any new arguments that would undermine this conclusion. Basically, the arguments made in the Supplemental Brief only rehash what is already before the court and already addressed in this Opinion to the extent necessary.  In fact, the Supplemental Brief specifically confirms that the jury was made aware of Gober's testimony before the Grand Jury and had that information to assess his credibility.  Defendant states:

Furthermore, during Holley's trial Gober testified and confessed that when he went to said grand jury he had lied about some significant issues, (see trial transcripts pg. 457 line 5-7).  Gober also testified that when he appeared before said grand jury most of his

From his testimony at the initial resentencing hearing, it appears that his lawyers were aware of his arrest on October 5 and chose not to introduce that fact in cross-examining Murry. ECF No. 633 at 12-14. The court expresses no opinion on the wisdom of that decision, but its logic is apparent, as introducing Defendant's unrelated arrest on October 5 would have injected additional negative information about him into the trial that could have affected the jury's perception of him.

Moreover, his trial counsel already presented Defendant's argument that he was not at the house of Gober's sister on the morning of October 6. See ECF No. 320 at 594-96. His attorney cross-examined the government agent who presented the cell site location data about Defendant's location on the morning of October 6. See ECF No. 319 at 511-17. In her closing argument, she argued that Defendant was at the hotel the morning of October 6 and not at Gober's sister's house, citing that cell site location data.

_____

testimony were lies, (see trial transcripts pg. 455 line 5-10). Gober further admitted that pretty much everything he had testified to before said grand jury was a lie (see trial transcripts pg. 455 line 8-10).

ECF No. 640 at 8-9. Defendant's Supplemental Brief only reinforces the jury's verdict and its role to assess the credibility of the witnesses. The Supplemental Brief does not aid in Defendant's argument of "prosecutorial misconduct" or in his new argument that the indictment should have been dismissed on this basis.

ECF No. 320 at 594-96.  In finding the Defendant guilty on all counts, the jury clearly rejected this argument.  Defendant may disagree with the jury's finding, but he cannot simply reassert this argument in a Motion for a New Trial at this juncture.[11]

VI.

For the reasons stated herein, Defendant's Motion for a New Trial, ECF No. 631, is **DENIED**.  The Clerk is **DIRECTED** to send a copy of this Opinion to Defendant, the United States Attorney at Norfolk, Mr. Protogyrou, and to the Clerk of the United States Court of Appeals for the Fourth Circuit.[12]

Defendant is **ADVISED** that he may appeal from this Opinion by forwarding a written notice of appeal within fourteen (14) days of the entry of this Opinion to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia, 23510.

IT IS SO **ORDERED**.

_Rebecca Beach Smith_
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

August 14, 2024

---

[11] Defendant could have asserted his current arguments in his previous attempts to collaterally attack his sentence, but he did not assert them in either of his motions under 28 U.S.C. § 2255. See ECF Nos. 389, 509.

[12] See ECF Nos. 632, 636, 638.